v. Jermaine Mingo, 2374-85. Mr. Perez. May it please the Court. My name is Dan Perez. I represent Jermaine Mingo pursuant to the Criminal Justice Act. On this record, this Court cannot know with certainty the reasons why the district judge imposed the sentence that it did, and it cannot discharge its obligation to evaluate the reasonableness of that sentence or assure itself that the sentence was sufficient but not greater than necessary to carry out the objectives of the sentencing law. And when you're talking about this sentence, I realize that there are things about the one year of incarceration that you found objectionable, but given that that's passed, you're not challenging those on appeal. That's correct, Your Honor. So it's really the term of supervised release is the only thing you're challenging? That is the only thing we were challenging in our briefs. That's the only thing we're challenging on the appeals, the additional three years of supervised release on top of the three years that he already completed plus the one year of imprisonment. And I would direct the Court to page 112 of the appendix, lines 14 to 17. The closest thing there is to an explanation is those three lines. And the district judge says, I am well aware, while not making any judgment as to what you were doing, Mr. Mingo, and it seems to us that that is precisely the problem. If you're not making a judgment as to what it is he was doing, then how can this Court review whether the sentence was reasonable? When this petition was filed, there was an allegation by probation that he was distributing marijuana. And that would be very, very serious because he was convicted of distributing narcotics. At the first appearance, Judge Skoen said, it looks to me like you've been distributing marijuana, Mr. Mingo. But something happened in the 17-day period between the September initial hearing and the October sentencing in which probation and the government changed their theory of whatever it was Mr. Mingo had done. And we now know that because of the email that I supplied with the Court and that the Court granted the motion to expand the record. And didn't the Court then essentially, when I read, while not making any judgment as to what you were doing, I read that as the Court saying, I am not assuming that you were dealing. And my sentence reflects that I'm not assuming that, that I'm assuming that you were possessing this but not necessarily dealing it. Why isn't that the right way to read the Court's statement? Because, first of all, Your Honor, because 17 days before, the same judge said, it looks to me like you've been distributing. And the petition said, it looks to us like you've been distributing. But also because there are different kinds of possession. What Mr. Mingo admitted to when he admitted the violation was constructive possession. And he was very clear. He was in my house at the initial hearing. I did not understand that if it's in my house, it's in my possession. Now I know. And so I'm admitting the violation. There is no suggestion in the record that Mr. Mingo went out and bought or otherwise procured the 90 grams of marijuana. There's no indication in the record that he was even aware of the packaging material or where the packaging material was found. Well, I suppose there's a little bit of indication in the record that it wasn't just passively in the refrigerator without his engagement, right? The text message with the nephew suggests that the nephew, who's the presumed actual owner on this theory, actually asks him if he can have some. And he says, no, I need this.  If I could just clarify one thing. The marijuana was in a freezer bag. And the defense lawyer said it was in the freezer. It was never in the freezer. Sorry. So, no, that's, I made the same, I read the record. So it was in a freezer bag, but not in the freezer. Well, it was in a freezer bag. And it was in Mr. Mingo's bedroom. How did it come to be in Mr. Mingo's bedroom? Because he took it away from his 16-year-old nephew. Now, how it ended up in the home in the first place, we don't know. And so I've come back to, there are different. Doesn't that exchange suggest that Mr. Mingo had control of it? The nephew asked for some. And Mingo says, I need that for someone, fam. I mean, it seems to suggest that he had control over it. He wasn't going to give any to the nephew because he needed it for someone else. Yes, Your Honor. Yes, Your Honor. But again, who suggests not only knowledge, but control, and that it was his? He had control. It's not our position that he never had control. It's our position. We're talking about 90 grams, not just a small amount. It's a significant amount. It's not a personal use amount. We don't contest that. That's why he admitted the violation. It's not our position that he didn't violate. He did. And it's not our position not to. Just a moment ago, I thought that he might not have even known it was there, but it was in his house. I apologize if I left the court with that impression. That is not my argument. My argument is that there are different types of possession. And the initial allegation here, and the judge's initial view of this case, was he is distributing. And that is a far cry from he's simply possessing it. The record indicates that he had already, in roughly a year after being released, had already had three violations. Two, Your Honor. I'm seeing May 9th, July 19th, and August, all of 2021. Your Honor, there were two violations in 2021. One was for being out of the district and speeding. One was for testing positive. Yes, and one was for testing positive. The allegation with respect to the possession was 23. Was there one on August 2021 for associating with convicted felons and a co-defendant? That was not written up, and that was not charged. That was in the violation petition, but he was not charged with that. So there were at least two that he was charged with. Yes. There's a third one that sort of was reported, but not followed up on. And then there were 90 grams of weed in his house that he knew about. Why is three years more of supervised release unreasonable in those circumstances? Does it not matter under what circumstances he was possessing the marijuana? Does it not matter that this man- What could be an innocent explanation? He provided it. He took it away from his nephew, and he made a mistake by not disposing of it and not getting rid of it. That was what he said was, I took it away from my 16-year-old nephew, and that's his error. But if I can just make another point, and I think this is particularly relevant. Where we don't know why the judge specifically imposed a sentence of three years, it would be one thing if that was the first time we're making that argument. But less than a year before, Mr. Mingo had come up to this court on appeal from the denial of his petition, denial of his motion for early termination of supervised release. And Judge Sack, you were on the panel that said, we find that the district court did not provide an explanation at all. It's harmless error because there is a temporal proximity between the two violations in 2021 and the motion for early termination. And so against that backdrop, it seems to us that it is all the more important for the court to specify what it was he did in 2023 that led to this sentence. So that this court can undertake its review, so the public can understand the reason for the sentence. So probation has some guidance as to what it is that they're supposed to do with him once he gets released. And again, he's now back out on supervised release. He's just started another three year term. It seems to me, and I don't know this for sure, there's another motion coming for early termination of supervised release. What's not being touched on in any of these proceedings, unfortunately, is this man has done a terrific job.  No. Unblemished? No. But he worked his way from a USP to an FCI down to a low security institution. He successfully completed six months in a halfway house. He got a job. He got a house. He secured a loan and a line of credit. He paid back the $10,000 loan. His job at page 71 resulted in a good review from his employer. He left that job, went to Target for more money. He went to Florida to get to a convention with life insurance agents. This is supposed to be rehabilitation. And if you read, Your Honor, that Judge Scullin's explanation, it really does feel like it's just punitive. There's nothing rehabilitative about saying to him, here's another year, looks to me like you haven't learned your lesson, another year in prison, and three more years of supervised release. If that's all he said, I take your point. He then goes on to call for substance abuse treatment, which suggests a rationale for a meaningful period of continued supervised release. I think you need this rehabilitation. It would be odd to require substance abuse treatment and then have a term for three months, or no term at all. Aren't those, isn't the substantive conditions part of the explanation for the term? Sure, yes. And I don't take issue with the requirement that he receive additional substance abuse treatment. He's got a substance use disorder, so he needs that. He can only benefit from that. But again, the question is, from our standpoint on appeal, why is a sentence of three additional years of supervised release sufficient but not greater than necessary to carry out the goals of sentencing? And unless there's a specific finding, unless with respect to Judge Scullin, you make the judgment as to what he was doing, how can you say that this sentence was reasonable? That's our position. We'll have an opportunity to hear from you again. And we'll hear from Dr. Dosanjh. May it please the court, Rajiv Dosanjh for the United States. I think if you look at the judge's explanation, that gives the reason for what he did. He says, I'm not deciding that you have possessed or with an intent to distribute. But given the circumstances around this violation, I am concerned about the direction in which you're heading. He says, the marijuana you're possessing suggests you still haven't learned your lesson. Now- What's the significance? I mean, I sort of struggled. I did interpret the court as sort of saying, I'm not necessarily concluding that you're dealing. But the reference to packaging materials and having the cell phones rather than failing to report them, those don't seem like facts that would be significant. Other than perhaps supporting an inference of dealing. What- Your Honor, I don't, I think we're kind of going down two different paths here.  There's whether the district court found he was actually dealing. And the government, and I think the court, acknowledges there's not enough here to prove that. Nevertheless, if you look at the circumstances of offense, they are concerning. And that is, I think, a legitimate concern a court can have. And it was Mr. Mingo's direct concern not to be found to be distributing going into the hearing. So if everyone was respecting that, that doesn't mean the judge has to shut its eyes to the surrounding circumstances. And I would really point the court to the text messages, which completely contradict the idea that he took this away from his nephew. The nephew is asking, you know, about the marijuana in the freezer. And Mr. Mingo says, you can't have any of it because I need all of that for someone else. That's a pretty damning- He says, because that's where it goes, got to keep it fresh, my boy. Right. And so I'm not sure, perhaps I'm missing the reference, but it does sound to me like as if it's in the freezer for one thing. Are we trying to have it both ways? Are we trying to say, oh, the court didn't really make a finding that he was dealing, but then we're also pointing to facts that suggest that that's exactly what was happening? Yeah, again, because he's not making a finding, an actual finding, and suggesting that his sentence was based on a finding of dealing, then I think that's okay. You can still be concerned about the circumstances by which this violation arose. It does suggest that Mr. Mingo did not learn his lesson from the previous violations, from the modifications that were given to him to try to avoid revoking his supervised release. He kept going down this path. He harbored a wanted fugitive, who was his nephew, to be sure, but still, that's where the nephew was found. And he had this marijuana in his possession, you know, and told his nephew, you can't have any of it, because I need to give that to someone else. Those are not good circumstances, and the court was perfectly within its rights to say, look, I don't want to then just give you no supervision to follow. You need more supervision, because you haven't proved yet that you can be outside without continuing to violate. He was no doubt making progress, but that cuts both ways. If he is actually taking steps to, you know, sell life insurance, to get a securities license, that suggests he had a choice. He still made the choice to do these violations and to not report his cell phones. So, again, I think the real question is, it's not, you know, can we not understand what the judge did here, why he did it? It's in the record, and it's, you know, it's Mr. Mingo not learning his lesson. The court wants to give him more time to prove that he can be outside of prison without violating the law, without violating the conditions of supervised release, and to have proven that he's rehabilitated. The one thing I would also point out, if you look at the opening brief filed by Mr. Mingo and the reply brief, this particular claim that we don't know why the judge did what he did and he's perhaps basing this on unproven conduct, that's not in those briefs. So, to the extent, I think we, the government believes that those arguments are waived, but if the court reaches them, I think they still have no merit here. It sounds like the legal question about whether there was a miscalculation of the guideline range for imprisonment, that's off the table now. In any event, it would be moot, so the court doesn't need to breach that. Finally, I just would emphasize that the government, when it said in its email, look, we're not going to make him admit to dealing, that was in response to a concern by Mr. Mingo, and I think everyone involved with this, you know, honored that request. It still, again, doesn't require the court to shut its eyes to the circumstances, and those circumstances suggest that he still has a problem with complying with the law. Unless there's further questions, I'll rest on the arguments in the government's brief. Thank you. Mr. Kress. Obviously, we can't make an argument if we don't have evidence to make the argument, and until Wednesday of last week, we didn't have the email, and the email didn't say, we're not going to make him admit. The email said, neither the government or probation are alleging that Mingo was dealing THC. FJS, Judge Scullin, may think that, but the allegation is that Mr. Mingo was simply possessing a small amount of THC that was either his or belonged to someone else. Isn't, I mean, that's interesting that you refer to that as evidence. It wasn't on the record in the sentencing hearing. Unfortunately, technically, Judge Robinson, it's not. And all I can do is put information that seems relevant before this court. He's out, so I don't even know if he can file a 2255 at this point. But we now know that there was this change in the position on the part of probation and the government. And based on the email, they couldn't even say that the marijuana was his, or how much was his. So that's the first issue. The second issue is, with respect to the changes-  This goes back to you. I thought you weren't contesting that he agreed that he possessed it and had control over it. Constructive possession, yes. And actual possession at some point. Yes, at some point he did. He did. And even his story, I took it from my nephew, that is a constructive possession. It might have been if he kept it in the nephew's room. Yes. So I don't understand what the whole different kinds of possession argument means. I guess my answer to that question is, is there not a difference from a sentencing standpoint between a guy with this conviction of narcotics distribution who goes back to distributing narcotics, goes back to selling, let's say on the cell phone. And by the way, we know it was on the cell phones. So either they weren't password protected or he gave probation the password. But let's say the cell phones showed he was actively involved in distributing marijuana. Would that not warrant a significantly longer sentence than merely possessing it? One reasonable interpretation is Judge Gullen was saying, I am not going to conclude that he was dealing. If I were to conclude that he was dealing, I might do more than a year in prison. I'm only doing a year in prison. And in light of all these other circumstances, I think three years of supervision, additional supervision, is appropriate. But Judge Chin, your Honor wrote in Aldean. It was your Honor's opinion that said you have this live factual dispute that was not resolved by the district court. And in light of the fact that this factual dispute was not resolved by the district court, we can't tell if Aldean was in no good. The district court's assuming, essentially assuming it in favor of the defendant. I'm assuming that you weren't dealing. But he did have it. He did have 90 grams. And so, who knows for sure, but the question is whether it's worth sending it back under these circumstances. Is it so bad to be on supervised release for three years? My experience is that with the RISE program in the Southern District, is that the probation department really tries hard to make sure you're on the straight and narrow. And as you've already suggested, he could make an application for early termination. Judge Chin, he's in his mid-40s. He's a different person than he was back in his youth, back even when he committed this crime. So the answer to your Honor's question is yes. And again, why assume? Isn't the whole purpose of having a hearing to resolve factual questions so that we don't have to guess? Is there a be careful what you wish for element here? I mean, I'm thinking there may be reasons why it was very important to him to be circumspect about what he admitted to. If we sent it back and the court did make a finding that he was dealing, for example. Maybe that gives you an appeal issue, I don't know. But I'm imagining given the way that he's building his life back, that there may be licensure consequences and other things. I mean, I assume that's a risk he's willing to take and that's why you're here. It is. It was very important to Mr. Ming at a challenge, only the term of supervised release. Okay. Thank you very much. Thank you. I appreciate it. Thank you both. We'll take it under advisement. Get something out. Appreciate it.